We turn to our second case of the day, United States v. Abramson, Appeal No. 25-2571, and we welcome Mr. Ussarovich to the podium when both parties are settled. Good morning, Your Honors. Good morning. I'm Attorney Ilya Ussarovich. I represent Mr. Abramson in this matter. This is a tax case, a criminal tax case, that had a couple of nuances in it. Mr. Abramson was indicted for filing false tax returns under 7206, and there were 13 counts for false tax returns. There was also an additional count added for tampering with a witness, and then a contempt count in the indictment. So there was 15 total counts in the indictment, 13 tax ones, one for tampering with a witness, and one being contempt. Now the issues that this case presents, the factual issues are there, the facts were the In counts 1, 2, and 11, the actual tax returns themselves were physically not signed. What was signed was a Form 8879. Now that does not fall under the definition for a tax return to be considered a tax return. It's more considered of another document. And what happens is the statute says anyone who willfully makes and subscribes any return statement or other document, and the question there is the other document part. Mr. Abramson was only indicted on those counts for filing tax returns, not actually the Form 8879. So that was the only form that was signed. So there was not enough evidence to show as to counts 1, 2, and 11 that there was actually a filed false tax return that was signed. In those counts, those tax returns were unsigned, and the only form that was signed was in 8879. Counsel, this argument was not raised below, is that correct? There were some issues that weren't raised below. I was not the original attorney on the matter, but there was a Rule 29 motion filed, and it was a broad one. And there's case law that I've cited in there that says if it's broad enough, we can address it under plain error, otherwise it's still included. But even then, even if it wasn't raised, what we're looking at is the actual evidence that's in the case. This is not like, there's a separate jury instruction issue on this, but we're looking at the evidence. And the argument was that in light of all the evidence, the jury still couldn't have found him guilty on those three facts. And that's because there wasn't the required element of a signed tax return. There was a signed other document, but not a signed tax return for those three. Why isn't that really just a variance argument? That I can't answer, Judge. I don't know. I think the variance argument goes into the next case, to the next part. And that would be the issue of the remainder of the tax returns. The issues there are whether they were made and subscribed. Now, the issue is that 7206, 7206-1 deals with somebody who prepares their own tax repair, who makes it and then files it and gives it without a third party person involved in it. 7206-2 deals with when there's a third party involved, when one causes or procures or counsels someone to file it. In this circumstance, all the tax returns in counts 1 to 13 were not prepared or made. And that's the definition, makes and subscribes. So one of the issues here is that Mr. Abramson never made those actual tax returns in counts 1 through 13. They were made by his CPA. And so he was charged for conduct that he didn't commit. He didn't make those returns under 7206-1. It was someone else that did. So with the 13 counts, you're missing the one part of makes. You have the subscribes on those other 10 that were signed, but you don't have the subscribed on the first three and the makes on the remainder of the 10. The other issue is whether they were filed. You know, and the definition of filing according to two other circuits is not when the government or when the IRS receives the documents. It's rather when they're filed pursuant to the statute according to where they're supposed to be in the IRS regulations. Not just simple receipt, because merely giving them and stamping them as received was not sufficient in a new, and I think it's the Batano case. Moreover, there's no, the other issue is that. Although there was an IRS custodian or employee who testified that they found the returns in their records. They have the returns. Why wouldn't that be enough for the jury to conclude receipt? Well, that's the issue of Batano and Anute. That's the only element that they proved were that they were received. The issue is that you have to show that something beyond mere deliverance, because merely delivering something to the IRS and its receipt of the item was insufficient. And that's in Batano and Anute. Generally speaking, you have to show that they complied with the IRS regulations that they were given in the Internal Revenue District in which it was located. There are a plethora of other things. Merely just delivering them wasn't enough. Like in Batano, the person delivered, hand delivered some IRS records or tax returns to an IRS agent. The court found that just delivering them was not the procedure set by the IRS code, so therefore filing was improper. In Anute, it was the same thing. He gave documents and just received them, but there wasn't meticulous compliance with the code for delivery. So you have to show that, yes, they were received, but you also have to show that they were given according to the actual rules in place on how to deliver them and file them. And here, all that was shown was that they were received. And the problem is the government will say, well, they were supposed to be filed in a certain location or area of the country where that person resides or where the company is incorporated and so it's got to go to Cincinnati. But here you'll see there was a letter to Washington, D.C. asking for permission to file these documents, right? And you'll see there was a stamp, one received in Kentucky, one received in Cincinnati, one received in California, but the government and the record only shows that there was simply a letter sent to Washington, D.C. and somehow they all got stamped from all over the place. It doesn't show that they were all delivered to one place in Cincinnati, Ohio. It shows D.C., Kentucky, California. And that in and of itself shows that there wasn't the proper delivery because they had to be in one area. We don't know they went to Washington, D.C. for permission to file. It wasn't even, there's a letter asking, can we file these because they were late? And that's the other part. Are they considered tax returns? You know, the case law says that amended tax returns are a creature of, I guess, bureaucracy or administrative, what you would say, grace, not so much anything that's statutory or set by Congress or the IRS or any administrative agency, it's just they're nullities in a sense. And there's a time limit on filing them. So that's one of the issues we have here is, were these actually filed the way they're supposed to be? And we don't have any proof of that in the record. There was no way to find that. And that was partly the problem with the instruction that was given. But now, moving on to the contempt charge, that's an interesting one because generally when someone commits criminal contempt, you have to, you proceed under Rule 401, right? There's three, that's generally the codifications of when the court can punish someone for contempt. And under 401.3 is when you commit a criminal crime. Now, if that's a criminal, for example, if the conduct that is contemptuous is a violation of a criminal statute, then Rule 402 comes in. And the United States attorneys ordered, because they use the word shall, to prosecute the individual. The problem is, there's a disclaimer that says if the criminal conduct that violated that order to create contempt was an order in which the United States was a party to the proceedings, then it has to be punished under the common usages of law or the common law in a sense. Which puts us to Rule 42. Rule 42 codified the common law. So they said there's no right to a jury. And when you go to Rule 42, that rule strictly has to be complied with. There's no right to an indictment. So the question is, is how could the jury have the jurisdiction or even the government have the jurisdiction to submit this charge to the jury for an indictment? So you got too much process? I wouldn't say process. I'd just say it went beyond the confines of what Congress has stated for both the courts and the government's powers. So if Congress said you can't get an indictment on this, it means you can't get an indictment on this, which means you can't bring it to a jury. So I don't know if it's too much process. I don't know how to answer that, except for that I think it's the improper process. And what I mean by that is, 42 has to be strictly complied with. So all they were supposed to ask for was an order to show cause or an order of arrest and then prosecute him. And he wasn't supposed to have a jury trial because I think it's 3691 and 402 themselves say if it's a violation, if the conduct that's contentious is criminal and a violation of an order that the government is a part of, a proceeding there, you don't get a jury trial and it's got to be tried before the judge with a notice. Counsel, can you, I'm sorry, can you tell me why you think that 401 and 402 are mutually exclusive? Like, why can't a, the government proceed under 401.3, the disobedience of a lawful order? Well, because I think what happens is it's when it's the disobedience of a lawful, here's you could argue that 401 applies there. But once... Why did, why did, I don't see anything in here that says that doesn't involve criminal conduct. Correct. What I mean is it doesn't involve, so when you violate an order under 401.3 and there isn't a violation of a separate criminal statute in a sense, then 401 applies. 401 definitely seems to involve crimes because it says punishable by fine or imprisonment and it contemplates that. Correct. But there's plenty of things that people can be held in contempt for that are not crimes in a sense and still be punished by imprisonment. But what I am trying to explain is that in 401, and the way the courts have said it is that when a person is charged with criminal contempt only under 401, but in fact the contempt charge consists of conduct which also violates state or federal criminal law, the provisions of 402 and 3691 automatically come into play. And that was the Pyle case. So what happens is when you just have some kind of indirect whatever it is, just a natural simple 401.3 violation, 401.3 could be applied and then you use rule 42 for it in a sense. And then when you get a criminal violation that's also, or a violation of contemptuous conduct of an order of a court that violates a criminal law, Congress has instructed the United States Attorney and the courts to operate under 402. However, if the United States Attorney is a party or any government agency is a party to that order that was violated and there was a violation of a criminal law, then you got to go under rule 42. There can only be, there can't be a jury trial and the maximum punishment there is six months. And that makes sense because the person is going to be charged criminally anyways. You're going to have a separate sentencing hearing. You're going to have a separate, you're going to have a separate sentence for that in addition to what the court is going to give under rule 42. So it's two separate things. One is adjudicating the courts, right, in a sense. And the other one is adjudicating the criminal, but you can't do the contempt because it's already being punished under rule 42 and the criminal charge is in the indictment in a sense for the witness tampering, but you can't add another contempt charge. And that's what the court says. So here, and I'll stop in a few minutes after I address the government, but here one of the issues is, is that he was given a jury trial when he wasn't supposed to have one and the punishment was 24 months. The way that these laws read, the most he can get when it's a violation of a court order that's also a crime and involves the United States government is six months. That's what it, that's the only way to read this with the constitutional right to a jury is that here they remove that right, which we said later you have if it's a serious punishment being six months or above. So here it was, there was not supposed to be an indictment or jury trial. And you are into your rebuttal time. Okay. Thank you. I'll stop now and I'll get back to the government. Thank you. Okay. Mr. Rothblatt. May it please the court, Richard Rothblatt on behalf of the United States. This court should affirm defendant Michael Abramson's convictions for making false statements and tax returns, attempted witness tampering and violation of court order. The evidence established that defendant, a attorney who had been practicing in the state of Illinois for three decades, caused the filing of false tax returns, individual and corporate returns that took improper deductions for payments made to his mistress and then made attempts to obstruct justice by tampering with a witness, providing a binder with handwritten evidence to that witness in order to influence her testimony. In doing so, the defendant also violated a court order, the order setting his pretrial release, which precluded contact with witnesses unless necessary to the operation of his business. The court's instructions, which largely track the pattern instructions, were proper. The deviation from the pattern instructions related to the filing of the tax returns, which I can address as well. With regard to defense counsel's argument about the signature and the tax returns in question, this relates to three counts, counts 1, 2, and 11 of the tax returns. Those were the only ones that were e-filed. But as this court and several courts of appeal have held, the filing of tax returns pursuant to a Form 8879, an e-file authorization, is appropriate. The taxpayer is subscribing that return when they, under penalty of perjury, sign an 8879 authorizing their tax preparer to e-file the return. So the defendant, in those three instances, did exactly as the statute requires. He subscribed the returns and authorized his tax preparer to file it. With regard to the making of the returns under 7206.1 versus 7206.2, I think defense counsel just misstates what's required under 7206.1. The defendant did make these returns. Keep in mind 7206.1 is, in effect, a perjury statute. It's making a false statement. So when the defendant makes these representations to his tax preparer, when he causes these returns to be filed, and they are, in fact, filed, he is the one making those statements. He signed several of these returns under penalty of perjury. He made and subscribed these statements. With regard to the filing of these returns, the instruction from the court was proper. As the courts have held, including the Seventh Circuit, a tax return is filed when it is received by the appropriate authorities under the appropriate procedures. The case is cited by, and referenced by, defense counsel Allnut and Boitano are completely different from the circumstances here. And I'll keep in mind, the corporate returns that are applying to defense counsel's argument were only counts three through nine. It's not every count of the indictment. But those returns were submitted to the appropriate authority, the Cincinnati Service Center. A tax official from the IRS testified that each and every one of the returns in question, in counts one through 13, were obtained from the master file of the IRS, which means they were received by the appropriate channels of the IRS. Allnut and Boitano are completely distinguishable. In Boitano, a tax return was handed to an IRS agent, a criminal investigator, IRS agent. Not the same thing that happened here, where they were actually submitted to the appropriate service center for processing. And in Allnut, a tax preparer handed the tax returns to the secretary of a district council of a particular office. And in that case as well, the appropriate procedures weren't followed in order to file the returns. So not at all on fours with the current process. And just to clarify the record on one issue, the returns in question here weren't sent to Washington, D.C., separate and apart from the defendant's causing and filing of the returns and the submission to the service center. He sent a private letter request to an agency of the IRS in California. These things happened at the same time. One doesn't preclude the filing of the tax return. It's simply a request from the defendant to get clarity on his ability to incorporate the one corporation underneath another corporation. It doesn't relate to the filing at all. And he submitted this request, which was denied nine months after he had already filed the tax returns. Mr. Rothblatt, with regard to section 72061, there's no, I mean, the word filed doesn't even appear in that statute, right? It seems like this kind of venture into trying to figure out whether a return was filed or not filed. I mean, you don't even have to prove that it's technically filed, even under Mr. Abramson's kind of construction of what filed means, to satisfy 72061. Judge, I will agree that it's not in the statutory language. It is in the fifth element in the pattern instructions that the defendant filed or caused someone to file the income tax return with the Internal Revenue Service. So I do submit this is something the government did have to prove beyond a reasonable doubt. But based on the evidence of the receipt of these tax returns and their ability to be recovered by the IRS in their master file, the government did prove this element beyond a reasonable doubt. What's the appropriate standard of view here? Judge, I think in terms of the instructional issues here, other than whether or not they were filed, I do submit that the defendant waived these issues. This was more than a mere no objection to the elements instructions of the definition of corruptly. Defendant submitted his own jury instructions. He joined a submission with the United States proposing his own instructions. So this wasn't just simply no objection to proposed instructions. He affirmatively waived any objection to the pattern instructions that the court gave. With regard to the instruction on the filing of the returns, I would agree that is a de novo review by this court because they did object at the time. What about with regard to the Rule 29 motion? The Rule 29, I mean, the evidence is to be considered in the light most favorable to the government here. And the only issues here that are raised are whether or not they were made and subscribed. I think the arguments kind of overlap when it comes to the instructional issues and the factual Rule 29 arguments that the defendant makes. Let me ask you a broader question about the factual background. Reading your brief, the government seems to be saying they started investigating Mr. Abramson based on investigating the Mexican affiliate or the Mexican-related company to Abramson's company, Grupo... I forget the second name. Mexicatique. Mexicatique. But there was trial testimony that suggests that the government was looking at Mr. Abramson first. Which is it? Judge, I think the trial evidence that came out is that the IRS observed cash transfers from a bank account associated with Mr. Abramson to Grupo Mexicatique and made a request of tax authorities that was then transferred down to Mexican tax authorities. So that was kind of the initiation of the investigation here. So it was both? What's your answer? I think the fair answer is both. There was an investigation open. There were an evaluation of cash transactions involving wire transfers from an Abramson-based account in the United States to an account based in Mexico, Grupo Mexicatique, which precipitated the investigation. Thank you. Just to get to the contempt argument here, I think Judge Lee, I can be brief with this, I think Judge Lee hit the nail on the head here. They're not mutually exclusive. I don't believe the government could have proceeded under 18 U.S.C. 402. There is a specific carve-out at the end of that statute for any action involving the United States, which I think takes us back to the world of 18 U.S.C. 401. There's nothing in the statute or the case law that precludes the government from proceeding on 18 U.S.C. 401 for a violation of a court order. And to Judge Kohler's point, if anything here, the defendant was provided with too much process. The government wasn't sure what the ultimate penalty would be imposed if there was a conviction, so it took the prophylactic step of obtaining a grand jury indictment and proceeding to trial on the contempt count. The defendant has failed to articulate any prejudice from receiving too much process. This evidence would have come in under the witness tampering count anyway, under count 14, because of the violation of the court order that precluded his application of the affirmative defense for the witness tampering case. So unless there are any other questions from the court, the government asks that the court affirm the convictions. Okay. Thank you, Mr. Rothblatt. Mr. Rosarovich? Just briefly addressing the issues, the government talked about e-signing and that being sufficient. Unfortunately, with e-signing, the law that they cited to was 26 U.S.C.A. 6061-B1. But that law provided the secretary shall develop procedures for the acceptance of signatures in digital or other electronic form until such time as such procedures are in place. So that is a temporary law. The procedures that the government says were used to sign this document and then make it so that once this document is verified, that other document is digitally signed, those were temporary at a time when we just shifted. And now there's full regulations, and the government never cited to the full regulations, they just cited to the temporary ones that were in place while there was a transition for e-signing. As to the filing rules, it's kind of interesting because, yes, the definition of filing, it's never been defined. And the court says that in ALNET, it says while the term file or filed is not defined, the courts have long held that in order for returns to be considered filed, they must be delivered in the appropriate form to the specific individual or individuals identified as stated in the IRS code and regulations. And so if we're looking for, if the federal government, the criminal code is looking to determine when income tax files are supposed to be filed, say for a failure to file, right? We look to the statute to see when they are due. And the same has to be done for how they are filed. And so here, the rules say delivery, and that goes back to the first question, how come just handing it? Because there's more than just delivery, and that's what ALNET and Batano said. Delivering is one thing, but you have to do it meticulously how they want it for it to be considered filed. And unfortunately, there's no definition of file, but the courts, you have two circuits, and the courts have traditionally defined it that way. The other issue is that even if they were sent to California, the returns were sent all over the country. Somehow, the government has not explained why you have stamps in California, why you have stamps in Kentucky, why you have stamps in Cincinnati, and why you have a letter asking for permission to file these documents. So that's a little bit of an issue because they showed delivery, but they never showed meticulous compliance because it's everywhere. It's not just in Cincinnati and Ohio. The other issue is that the instruction, while it's true that the defendant, he objected to instructions, and I'll finish this last point if that's okay with the court. Please conclude, yes. He objected to the instructions, or I mean, he gave his own instruction for the definition of filed. It wasn't accepted, and the court gave an instruction over that. How much more is he supposed to do, object again and again? The court did that. So here, there wasn't a waiver or any of those issues because it was just one of those situations where it was just a no objection, nothing more, which was solved by this court in 2025. And that's it. Thank you. Thank you to both parties. We will take the case under advisement. Thank you.